THE CHANCELLOR OF THE STATE OF NEW JERSEY and BARBARA
GOETZ

*v.*

EDWARD B. SEIBERLICH et al.

[Decided April 21st, 1909.]

On May 12th, 1882, J. R. executed and delivered to the chancellor
of New Jersey a mortgage on certain real estate to secure the payment
of a trust fund deposited in the court of chancery. Five days afterwards
J. R. conveyed the mortgaged premises to F. M., and in the deed therefor
it was recited that the property was conveyed subject to the chancellor's
mortgage, the payment whereof was thereby assumed by F. M. He died
in 1895, having devised the premises to his wife, W. M. On February
12th, 1890, F. M. and wife mortgaged the same premises to P. S., which
mortgage was on March 17th, 1904, assigned to the defendant, E. B. S.,
who foreclosed the same and purchased the property at the sheriff's sale.
E. B. S. took possession under the sheriff's deed, thus dispossessing W.
M., and has continued in possession ever since. From the acquisition of
the premises by F. M. in 1882 until his death in 1895, and after that
until his widow, W. M., was dispossessed under the foreclosure sale of
the second mortgage in 1904, B. G., the life tenant of the trust fund
invested in the chancellor's mortgage, resided with them upon the mort-
gaged premises as one of their family, and they frequently (within
twenty years before the commencement of this suit) promised they would
pay her the interest on the chancellor's mortgage. In 1904 an insurance
policy upon the premises, the loss under which was payable to the chan-
cellor as mortgagee, was canceled and a new policy obtained by W. M.,
the then owner of the equity of redemption, and delivered to the chan-
cellor with similar mortgagee clause endorsed upon it, as collateral se-
curity for his mortgage. Nothing has been paid on account of the chan-
cellor's mortgage either for principal or interest; and the defendant
E. B. S. pleads the statute of limitations.—*Held,* that the facts and cir-
cumstances above detailed are pertinent equities sufficient to rebut the
presumption of payment of the mortgage by lapse of time, and that,
therefore, the statute of limitations does not apply, especially in view of
the fact that the defendant E. B. S., the assignee of the second mortgage
and purchaser at the sale under its foreclosure, had notice of the exist-
ence of the chancellor's mortgage from its record, from the recital of it
in the deed for the premises from J. R., the mortgagor, to F. M., whose
successor in title E. B. S. became, and from information imparted
verbally to P. S., the assignor of E. B. S., by the attorney of the W. M.
while the latter was the owner of the equity of redemption. *Blue* v.
*Everett, 56 N. J. Eq. (11 Dick.) 445,* distinguished.

On final hearing on pleadings and proofs.

*Mr. William S. Darnell,* for the complainants.

*Mr. Edward Dudley* and *Mr. William D. Lippincott,* for the defendant Edward B. Seiberlich.

· *Mr. Samuel D. Bergen,* for the defendants Barbara Moore and others.

WALKER, V. C.

On a sale of mortgaged premises under foreclosure the sum of $5,392.70 was paid into this court as surplus money. The premises upon the foreclosure sale were conveyed to Jacob Rettberg by the sheriff of Camden county on April 23d, 1881. The surplus money was, by the chancellor, loaned to Jacob Rettberg, who, together with his wife, on May 12th, 1882, executed and delivered to the chancellor a mortgage on the very same premises to secure its payment, and, on the same day the mortgage was acknowledged and recorded in full in the office of the register of deeds of the county of Camden, there being embodied in it a recital of the order of this court under which the money was loaned. Five days later Rettberg and wife conveyed the mortgaged premises to Frank Mester, and in the deed therefor it was recited that the property was conveyed subject to the chancellor's mortgage, the payment whereof Mester thereby assumed.

On February 12th, 1890, Mester and wife made a mortgage upon the premises to Peter Schemm for $8,000, and on March 2d, 1895, Mester died seized of the property, having devised the same to his wife, Wilhemina Mester. On March 17th, 1904, the Schemm mortgage was assigned to the defendant Edward B. Seiberlich, who foreclosed the same and purchased the property on the sale, and it was, on September 1st, 1904, conveyed to him by the sheriff of Camden county. The chancellor was not a party to that suit. Seiberlich took possession of the premises under his deed, thus dispossessing Mrs. Mester, and he has continued in possession ever since.

Seiberlich's defence is that the statute of limitations has

operated to defeat the chancellor's mortgage, no principal or interest whatever having been paid on account of it; and further, that in the event of the mortgage being held valid, that he, Seiberlich, is entitled to a lien upon the property for the sum of $1,598.94, the amount paid to the city of Camden to discharge its lien for taxes, &c., which were held, in the foreclosure of *Seiberlich* v. *Mester,* to be a lien upon the premises prior to the mortgage which he foreclosed in that suit.

Prior to the sale under the original foreclosure which produced the surplus money, the mortgaged premises were owned by George Goetz, who died seized thereof in 1875, and by his will he devised a life estate therein to his wife and provided that at her death the premises should be divided among his legal heirs. He left him surviving his widow, Barbara Goetz, a brother, Frederick Goetz, and two sisters, Rosa Minni and Barbara Moore. Rosa Minni died a widow, intestate, and without issue. Frederick Goetz died intestate, leaving him surviving Regina Goetz, his widow, Eugene Goetz, Fritz Goetz, August Goetz and Rosa Goetz, his children. Barbara Moore, the surviving sister, and the children of Frederick Goetz, the deceased brother of George Goetz, the original owner, are now entitled to the beneficial interest in the chancellor's mortgage, the life estate of his widow, Barbara Goetz, who is one of the complainants, having been extinguished by her death pending this suit.

The fact is that no interest and no part of the principal was ever paid upon the chancellor's mortgage. The practice that formerly prevailed with reference to these mortgages was for the mortgagor to pay the interest directly to the beneficial owners of the fund, thus saving clerk's commissions and delay in the payment of the interest. That practice, for prudence sake, has been abandoned and interest due on money loaned by the chancellor is now paid to the clerk and by him disbursed.

The surplus money was loaned to Rettberg upon the petition of Barbara Goetz, who had a life interest in the fund.

With the exception of the five days succeeding the making of the chancellor's mortgage until the foreclosure of the Schemm mortgage, Barbara Goetz and Frank Mester and Wilhemina, his wife, lived together as one family on the mortgaged premises.

The first question presented for solution is whether or not the statute of limitations has operated to defeat the chancellor's mortgage.

The mortgage under whose foreclosure Seiberlich became the owner of the fee in the premises was made subsequent to that of the chancellor, and in the deed from Rettberg to Mester (the maker of the mortgage last referred to) was a recital that the conveyance was subject to the payment of the mortgage made to the chancellor. The deed was recorded long before the Schemm mortgage was made and executed, and therefore Seiberlich, both as assignee of that mortgage and as the purchaser of the mortgaged premises at the subsequent sale, had constructive, which is equivalent to actual, notice of the existence of the chancellor's mortgage. *Kellogg* v. *Randolph, 71 N. J. Eq. (1 Buch.) 127, 128.*

In *Blue* v. *Everett, 56 N. J. Eq. (11 Dick.) 455,* it was held that when the legal right of action upon a bond is barred by the statute of limitations, and the legal right of entry upon lands mortgaged to secure the bond is likewise barred, the holder of the bond and mortgage cannot maintain a bill in chancery to collect the debt by sale of the mortgaged premises, unless he can show some pertinent equitable right beyond the ownership of the bond and mortgage. In this case Mr. Justice Dixon, speaking for the court of errors and appeals (at *p. 458*), said: "The debt is a mere legal entity, involving no obligation outside of its legal character, and having intrinsically no quality of which a court of equity can take cognizance. It would seem, therefore, that when, because of such a debt as the principal thing, a court of equity is called upon to give equitable effect to that which is only incidental thereto, the first inquiry should be, does the principal exist? Is there any legal obligation? And when for any cause the answer is found to be in the negative, the court should refuse to act." *Ergo,* if the answer is found to be in the affirmative the court should act.

In *Colton* v. *Depew, 60 N. J. Eq. (15 Dick.) 454,* the court of errors and appeals reviewed and explained the case of *Blue* v. *Everett, supra,* and Mr. Justice Depue, speaking for the court (at *p. 463*), observed: "The mortgagee has two securities for

the debt—the bond and the legal estate in the mortgaged premises. * * * The possession upon which the statute attaches must be adverse. * * * The doctrine of the law with respect to title under the statute of limitations is that there has been a possession adverse to the owner of the legal title for twenty years. Whether possession is adverse within the purview of the statute is a question of fact, to be determined upon competent evidence concerning the character of the possession, whether permissive or hostile to the title of the real owner. A person may be in possession of property for a period longer than that mentioned in the statute, without paying rent or making any compensation for his occupation of the premises, and not be within the statute of limitations. Possession, to make the statute available, must be adverse for the full period prescribed by the statute."

Between mortgagor and mortgagee the latter has an estate in the lands of the former. *Wade* v. *Miller, 32 N. J. Law (3 Vr.) 296.*

Both *Blue* v. *Everell* and *Colton* v. *Depew* were reviewed by Vice-Chancellor Pitney in *Ely* v. *Wilson, 61 N. J. Eq. (16 Dick.) 94,* and the learned vice-chancellor, speaking of the latter (at *p. 107*), said that the logical result of the decision in *Colton* v. *Depew* is that a mere acknowledgment of the existence of the debt by one not interested in the land pledged to its payment cannot be construed as an acknowledgment of the right of the mortgagee in the land. *Ergo,* as I take it, an acknowledgment of the existence of the debt by one so interested is an acknowledgment of the right of the mortgagee, and that, consequently, the holding of the owner of the equity of redemption making such an acknowledgment is not a holding adverse to the interest of the mortgagee, and therefore not within the statute.

*Stimis* v. *Stimis, 60 N. J. Eq. (15 Dick.) 313,* was considered by Vice-Chancellor Grey to be a case in which an independent equity was raised in favor of the life of a mortgage against the consequence of non-action to enforce its payment, notwithstanding the mortgage might otherwise have been presumed satisfied by the application of the statute of limitations. That was a case in which no payment of either principal or interest had been

made upon the mortgage for over twenty years, but it appeared that the mortgagor and owner of the equity of redemption was the sole surviving executor of the will of the deceased mortgagee and the only person who, during the period of defaults in making the payments which came due on the mortgage, could have taken steps to collect either the bond or mortgage, and (at *p. 319*) the learned vice-chancellor adverted to the fact that this very case of *Stimis* v. *Stimis* (as reported in *9 Dick. 17*) was mentioned in *Blue* v. *Everett* as one of those in which an independent equity was raised in favor of the life of the mortgage against the consequence of non-payment.

To return to *Blue* v. *Everett.* In that case it was held, that although the right of entry upon mortgaged premises was barred by lapse of time, a bill to foreclose would lie if some pertinent equitable right beyond the ownership of the bond and mortgage was shown. Mr. Justice Dixon observed—*56 N. J. Eq. (11 Dick.)* (at *p. 459*)—that this court had with respect to debts secured by real estate mortgages generally ignored the statute of limitations, and had held that unless actual payment of the debt be shown it would apply presumptions of its own when there had been long delay in taking steps to collect the debt, and he went on to remark that had these presumptions been clearly established and long maintained, that might of itself be sufficient reason for declining to disturb them; but that an examination of the cases would show that they were not well defined, citing *Wanamaker* v. *VanBuskirk, 1 N. J. Eq. (Sax.) 685; Evans* v. *Huffman, 5 N. J. Eq. (1 Halst.) 354; Magee* v. *Bradley, 54 N. J. Eq. (9 Dick.) 326; Murphy* v. *Coates, 33 N. J. Eq. (6 Stew.) 424; Moore* v. *Clark, 40 N. J. Eq. (13 Stew.) 152; Miller* v. *Teeter, 53 N. J. Eq. (8 Dick.) 262; Rockhill* v. *Rockhill, 14 Atl. Rep. 760.*

In *Blue* v. *Everett* the bill was filed over twenty years after the last payment of interest on the mortgage, and there was not one special equitable fact present which would prevent the running of the statute of limitations; but I do not understand that that case overruled the decisions in those last above mentioned so far as they were based upon special equitable circumstances operating to take the obligations sued upon out from

under the statute; at least, it seems to me, that the facts and circumstances which in them were held to be an acknowledgment of the existence of the obligations sued on and to prevent the presumption of payment, are still circumstances which may be taken into consideration, certainly so in connection with other facts, in determining whether or not the holding of a mortgagor in possession or those claiming under him has been adverse to the title of the mortgagee.

Since the decision in *Blue* v. *Everett* and *Colton* v. *Depew,* the court of errors and appeals has expressly reaffirmed the doctrine laid down by Chancellor Vroom in one of the cases, namely, *Wanamaker* v. *VanBuskirk, 1 N. J. Eq. (Sax.) 685,* by its affirmance of the decision of Vice-Chancellor Bergen for the reasons given by him in *Ayres* v. *Ayres, 69 N. J. Eq. (3 Robb.) 343; S. C., 69 N. J. Eq. (3 Robb.) 842.* The learned vice-chancellor said in *Ayres* v. *Ayres* (at *p. 346*) that the presumption of payment was overcome in *Wanamaker* v. *VanBuskirk* by the relationship of the parties and the fact that to have exacted payment would have brought distress upon a daughter and grandchildren who remained in possession and depended upon the mortgaged premises for support, and that the harshness of such a proceeding was held to make the indulgence and delay resulting therefrom reasonable.

Let us now look at the facts and circumstances presented in the case under consideration as showing the existence of the mortgage debt and as recognizing the equitable title of the mortgagee.

Frank Mester and his wife, Wilhemina, were in possession from the time he acquired title in 1882 until his death in 1895, and she afterwards, as his devisee, until she was dispossessed by the sale to Seiberlich under the foreclosure of the Schemm mortgage in 1904. During all of this time Barbara Goetz, who was the life tenant of the trust fund invested in the mortgage to the chancellor, lived with Mr. and Mrs. Mester upon the mortgaged premises as one of their family, she not having died till 1905, and they promised her that they would pay her the interest on the mortgage. Mrs. Mester's testimony was that they made that promise frequently, and she remembered one occa-

sion particularly, in the summer of 1887 or 1889, when she went to Europe, she told Mr. Schemm that the chancellor's mortgage was in existence and that his was a second mortgage. In 1904, while she was the owner of the property, the Franklin Fire Insurance Company, of Philadelphia, which had issued a perpetual policy upon the premises in question and the loss under which was made payable to the chancellor as mortgagee, canceled the risk, and Mrs. Mester called upon J. Willard Morgan, Esq., counsellor-at-law, in reference to it, and asked him to reinsure the premises and told him that the policy was held by the chancellor to insure his mortgage, and that when the new one was made out it was to be put in the place of it.

In 1889, while Mrs. Mester was owner in possession of the premises, she sent Mr. Darnell, her attorney, to Mr. Schemm on business concerning the title to the property, and Mr. Darnell informed Mr. Schemm that his, Schemm's mortgage, was a second one, and that there was a prior mortgage existing upon the premises. Mr. Schemm referred Mr. Darnell to his, Schemm's attorney, Mr. Weil (of Philadelphia), and Mr. Darnell made the same statement to Mr. Weil.

In 1904 Mrs. Mester called on Mr. Darnell, with Mrs. Goetz, the life tenant, and exhibited to him a subpoena in the foreclosure case of *Seiberlich* v. *Mester,* and Mrs. Goetz was very much exercised and in tears and demanded from Mrs. Mester in the presence of Mr. Darnell, payment of her money on the chancellor's mortgage, and Mrs. Mester replied that she would pay it, but was then unable to do so.

On June 3d, 1904, Mr. Morgan, representing Mrs. Mester, the owner of the equity of redemption, secured a policy of insurance from the Camden Fire Insurance Association upon the property in question to take the place of the perpetual policy of the Franklin company, which new policy contained a clause endorsed thereon that the loss, if any, was payable to the chancellor of New Jersey, mortgagee, as his interest might appear, and on June 6th, 1904, Mr. Morgan mailed the policy to the chancellor at Trenton, by whom it was received and filed in the clerk's office. Mr. Morgan acted for Mrs. Mester in the matter

and had an interview with the chancellor and from him received the Franklin company's policy for cancellation.

Another thing: Mrs. Mester was the niece of Mrs. Goetz and was brought up by the latter and regarded by her as a daughter. As before remarked, they all lived together as one family. Mrs. Mester and her husband were unable to pay the interest to Mrs. Goetz. To have exacted payment would have been a hardship upon them. They lived together upon the mortgaged premises and enjoyed its possession. Their relationship and situation, if not sufficient of themselves, when coupled with the other facts and circumstances regarding the non-payment of the mortgage and the acknowledgment of its existence, all combine, in my judgment, to create a rebuttal of the presumption of payment arising from the efflux of time, and to show that the holding of the mortgagors in possession was not adverse to the title of the mortgagee.

These views lead to the conclusion that the chancellor is entitled to a decree of foreclosure and for the sale of the mortgaged premises, and it only remains to ascertain the amount due upon the bond. As before remarked, the debt secured by the mortgage is $5,392.70. Lawful interest on this amount from the date of the bond, May 12th, 1882, to the present time, is approximately $9,300, making a total sum of approximately $14,700, and the question remains shall there be a deduction from this amount and an allowance to the defendant Seiberlich for the sum paid by him to the city of Camden for taxes under the decree in *Seiberlich* v. *Mester*.

The defendant Seiberlich claims that in the event of the establishment of the chancellor's mortgage as a valid and subsisting lien upon the premises in question he should be subrogated to the rights of the city of Camden in the sum of $1,598.94, being the amount of taxes, interest and costs paid by him to that city upon the purchase of the premises under his foreclosure of the Schemm mortgage. The city of Camden was a defendant to that suit and the taxes referred to were decreed to be a lien upon the mortgaged premises prior to the lien of the mortgage then being foreclosed.

The defendant Seiberlich in his answer avers that he has a lien upon the premises for the taxes paid which he is advised and believes is prior to any and all other liens. There is no prayer for subrogation, nor any answer by way of cross-bill praying affirmative relief. However, as no objection was made to the form of the answer, the defendant, if entitled thereto, can have a decree for these taxes either on the pleadings as they stand or on an answer in the nature of a cross-bill yet to be filed by leave of the court. *Fiacre* v. *Chapman, 32 N. J. Eq. (5 Stew.) 463, 466.*

Prior to the act of April 1st, 1898 (*P. L. 1898 p. 202*), the public policy of this state did not permit of investments made by the chancellor of funds in his custody to be impaired or lost by the acts of other public agents through the imposition of taxes, assessments or other rates for public uses, and mortgages made to the chancellor were held to be prior liens and to be superior to taxes and other municipal impositions. *Elizabeth* v. *Chancellor, 51 N. J. Law (22 Vr.) 414, 416.* The act mentioned provided that all lands that may be or may have been mortgaged to any officer of this state and held in trust for the benefit of any person should be subject to taxation, and all taxes so assessed should be and remain a lien against such lands as in case of taxes against property of other persons. This act was upheld in *Chancellor* v. *Elizabeth, 65 N. J. Law (36 Vr.) 479,* and although repealed by act of April 8th, 1903 (*P. L. 1903 pp. 436, 438*), taxes are still a lien upon real estate prior to these mortgages, under the provisions of the General Tax act of April 8th, 1903. *P. L. 1903 p. 394.*

Neither the act of April 1st, 1898, nor that of April 8th, 1903, are retroactive. They provide for taxation *in futuro.* Now, the decree in *Seiberlich* v. *Mester* recited that the sum of $1,598.94 was due to the city of Camden upon its certificate of sale for taxes and that the lien of the city under its certificate was prior to the lien and encumbrance of the mortgage of the complainant in that cause. There was no averment or proof in that case or in this case showing the years for which the taxes were assessed, and, consequently, if any part of the sum was for taxes assessed

prior to April 1st, 1898, there was no lien in the city for such part prior to the encumbrance of the chancellor's mortgage, and, consequently, no right of subrogation to the city's lien resides in Mr. Seiberlich as to such part of those taxes.

This whole question of taxes was but meagrely presented on the hearing. It is urged on behalf of the defendants, beneficiaries of the trust fund, that because the chancellor was not a party to the suit of *Seiberlich* v. *Mester,* in which the taxes were adjudged to be a lien upon the mortgaged premises, the defendant Seiberlich is obliged to prove in this case that those taxes were properly assessed, and became a lien upon the premises in question and were paid by his money. That question will not be decided at present, but the defendant Seiberlich will be given leave to amend his answer either by praying for subrogation to the lien of the city of Camden in respect to the taxes mentioned or by filing a further answer in the nature of a cross-bill, praying for affirmative relief, and the matter may be brought on for further hearing upon that issue.

There is nothing in the way of a decree for foreclosure and sale under the chancellor's mortgage, and the question of taxes can be settled on a distribution of the proceeds of sale which will be ordered into court. Let interest be calculated at six per cent. on the complainant's mortgage from its date and a decree will be entered accordingly.

Counsel asks for a fee in addition to costs. The only allowance by way of fee that can be made in the decree is that provided for by rule 224 of this court. *Shreve* v. *Harvey, 74 N. J. Eq. (4 Buch.) 336.* The amount provided in the rule is grossly disproportionate to the value of the services of counsel for the complainant in this important and litigated foreclosure, and an award commensurate with counsel's services will be made out of the fund to be raised and paid into court on the sale of the mortgaged premises, the amount to be determined upon notice to the beneficiaries of the trust fund.